## The PROPRIETORS of CAMBRIDGE *versus* AMOS CHANDLER.

From the 22d February, 1794, to the 1st July, 1831, sheriffs, in collecting taxes assessed upon unincorporated places, were bound to proceed in the mode prescribed in the fifth section of the statute of February 11, 1791.

THIS was an action of trespass *quare clausum fregit.* The *locus in quo*, described in the declaration, was the township of Cambridge, in this county. The cause was tried here at May term, 1830, and a verdict taken by consent for the plaintiffs, subject to the opinion of the court upon the following case.

The plaintiffs produced a charter, dated May 13, 1773, granting to them the township of Cambridge ; and proved that the defendant broke and entered the close as alleged in the declaration.

On the part of the defendant it appeared, that in the year 1821, a tax of $900 was duly laid upon the county of Coos, to defray the expenses of the county for the year 1822, and to be paid into the county treasury by the first day of February, 1823. On the 12th February,

1822, the proportion of the township of Cambridge was assessed by the county treasurer, who, on the 10th February, 1823, issued his warrant to the sheriff of the county to collect the tax, which amounted to $7,75. The warrant thus issued was lodged by the sheriff in the office of the deputy secretary of state on 10th May, 1823, where it remained until the 11th September, 1823, when it was returned to the sheriff with a certificate, that the taxes on the rights of six of the proprietors of Cambridge had been paid to the deputy secretary.

The sheriff caused an advertisement, dated September 8, 1823, and giving notice that the interest of the delinquent proprietors in said township would be sold at Lancaster, on the 22d January, 1824, to pay said tax, to be inserted in the N. H. Patriot, on the 22d and 29th September, and the 6th October, 1823 ; and in the N. H. Intelligencer, printed at Haverhill, on the 24th September, and the 1st and 8th October, 1823. In order to prove, that the interest of the delinquent proprietors was advertised for sale in Lancaster, the shire town in this county, the defendant produced a copy of an advertisement, with a copy of a certificate of the sheriff under oath thereon, that he had posted up the same at Samuel White's tavern, in Lancaster, three weeks, commencing more than eight weeks prior to the said 22d January, 1824. These copies were certified by the clerk of this court, in this county, with whom the originals were filed by the sheriff in January, 1825.

It appeared that the interest of the delinquent proprietors was advertised for sale in Cambridge, by putting an advertisement upon a board which was fixed in the sand by the side of Androscoggin river. There was no settlement, nor inhabitant, in Cambridge at that time. Hunters used to pass up and down the river. There was a public highway laid out through Cambridge leading from Errol to the state of Maine, as early as the year 1812 which has been travelled ever since.

On the 22d January, 1824, the sheriff sold at auction all the interest of the delinquent proprietors of the township of Cambridge to Thomas Carlisle, under whom the defendant made the entry of which the plaintiffs complain, for $27,85, being the amount of the taxes and costs, and on the 27th January, 1825, by his deed of that date, conveyed the said interest to the said Carlisle.

*Proprietors of Cambridge,*
*v.*
*A. Chandler·*

*Bell*, for the plaintiff, contended that nothing passed by the sheriff's deed to Carlisle.

1. Because the advertisements of the sheriff, giving notice of the time of the sale, were dated the 8th of September, 1833, before he had received a certified copy of his tax list from the deputy secretary.

2. Because there was no evidence that any advertisement was posted up in the town of Lancaster.

3. Because the advertisement in Cambridge was not posted up in a public place in said town.

4. Because the sheriff, in his proceedings in the sale, conformed, so far as he conformed to any law, to the provisions of the statute of December 10, 1796, and not to the provisions of the statute of February 22d, 1794, to which he was bound to conform as was settled in the case of *Sayles* v. *Batchelder*, G rafton, May, 1827.

*J. Parker* & *J. Smith*, for the defendant argued at a former term.

The first objection made by the plaintiffs to the defence in this case, consists of two branches. In the first place it is said, that the sheriff's advertisement is dated before the time when he had received a certified copy of his tax list from the deputy secretary. But surely this cannot be material. The date of the advertisement cannot in any point of view be of importance. The sale was not to be made, and was not made, until after the list was received. The case does not come within the *Iron works* v. *Barron*, 3 N. H. R. 36, or within the reason of the rule there laid down. In this case the advertisement was not published until after the list was received. In the next place it is said, that there was no proper proof that the

advertisement was posted up in Lancaster. The proof of this fact was a copy of the advertisement with a certificate of the sheriff, under oath, to the fact of posting it up in Lancaster, certified by the clerk of the superior court from the original in his office.

The statute of December 23, 1808, N. H. Laws, edition of 1815, 269, made in amendment of the statute of December 10, 1796, made it the duty of collectors of taxes, after a sale under the last mentioned statute, to lodge such advertisement, certificate and oath, with the town clerk and made a copy sufficient evidence of the fact, that the advertisement had been duly posted up ; *a fortiori*, the law must have regarded the original advertisement, certificate and oath as plenary evidence of the same fact.

The sheriff, under the statute of February 22, 1794, was, in a case like the present, a collector of taxes, and his advertisement, accompanied with his certificate and oath would be good evidence. By the statute of December 16, 1824, 1 N. H. Laws, 572, the original papers of the the sheriffs in relation to sales of land by them for taxes, are to be deposited in the clerks office, and copies are made evidence. The proof offered in this instance was then sufficient.

Another objection to the defence in this case is, that the sheriff in his proceedings followed the statute of December 10, 1796, and not the statute of February 22, 1794. The 3d and 4th sections of the statute last mentioned, under which the tax in this case was assessed, provide that the treasurer of the state, and of the counties, shall assess the proportion of any town or place not incorporated, having so few inhabitants as to be incapable of choosing town officers, and that the assessments shall be committed to the sheriff for collection. And the third section enacts " that every sheriff shall have the same power and authority respecting the taxes committed to him to collect, which collectors of towns have with

respect to the taxes of non residents, and shall observe the same directions which are by law pointed out." The question is, whether the sheriff in relation to the taxes committed to him in this case was bound to proceed according to the provisions of the 5th section of the statute of February 11, 1791, and the 2d section of the statute of February 22, 1794, notwithstanding those sections were repealed and other provisions substituted by the act of December 10, 1796, or whether the sheriff's power and authority were the same with those of collectors of non resident taxes by the laws in force at the time when the tax and sale in question were made ?

This depends upon the 3d section of the statute of 1794. There seems to be no reasonable doubt that the legislature intended to establish by that act an uniform system for the collection of taxes, so far as the nature of the case would admit—that the power and authority given to sheriffs were intended to be the same as collectors might have at the time of the assessment of the tax, and that the proceedings in relation to this tax, were correct in conforming to the provisions of the statute of December 10, 1796.

We contend that the language of the 3d section of the statute of 1794 is equivalent to this ; when any taxes shall be apportioned to any town or place, &c. the treasurer shall assess the proportion and commit the same to the sheriff, and every such sheriff shall have the same power and authority, respecting the taxes committed to him to collect, which collectors of towns *shall* have with respect to taxes of non-residents, and shall observe the same directions which are, *from time to time*, by law pointed out.

This is a correct grammatical construction of the language as it stands in the section. The language refers to a future action to be performed, and speaks of the time of performance as if it were present. The word *shall* is understood before *have* as inserted above.

Proprietors of
Cambridge,
v.
A. Chandler.

The present tense is frequently used instead of the future. Instances may be multiplied to any extent. The following are however deemed sufficient to sustain the proposition. In the constitution of this state is this clause. "The first annual meeting shall be held in the town, parish, or place wherein most of the rateable polls reside, and afterwards in that which *has* the next highest number." It is manifest that *has* is here used as a substitute for *shall have*.

In another clause in the constitution it is declared that "No person shall ever be permitted to hold a seat in the legislature, &c. who in the due course of law *has been* convicted of bribery, &c." In this instance it is apparent that *has been* is used as a substitute for *shall have been*.

In one of our statutes it is enacted that "every male inhabitant, &c. shall have a right to vote in the town where *he lives*, or of which *he is an inhabitant*. Here is another instance, in which the present tense is substituted for the future. The meaning most obviously is *where he shall live*, or *of which he shall be an inhabitant*.

To show that the construction for which we contend is the true legal construction of this clause in the statute, a great variety of instances of similar expressions in other laws may be cited, where from the nature and reason of the thing it would be preposterous to suppose that the provisions were not intended to be construed in the manner we think this statute is to be construed.

Thus in the act for establishing an equitable method of making taxes, is the following clause. "And all other rateable estate of such corporation or company shall be valued and taxed at the same rate as the same kinds of rateable estate owned by individuals *are* by law valued and taxed." That *are by law* is here used as a substitute for *shall be by law*, it is supposed will not be disputed.

In the act to facilitate the collection of taxes in the town of Portsmouth, the collector is authorized to appoint

deputies or assistants, and then follows this clause— " And the said deputies or assistants shall have the same powers as are by law vested in collectors of taxes." Since the passage of that act the powers of collectors have been materially changed by statute, and can it be doubted that the powers of the deputies are also changed ? Is the collector to act under one law and his deputies under another ? Surely not. In this instance, then, *are by law vested* must be considered as substituted for *shall be by law vested.*

Many other instances might be cited from the statute book, but this enough to show that there is nothing unnatural or uncommon in the construction for which we contend in this case.

The framers of the act, we are now considering, used the language of the 3d and 4th sections advisedly, and understood, that in relation to the taxes to be assessed under those sections, they were prescribing rules which were to conform to the rules respecting non resident taxes, and to vary with them from time to time. This is evident from the variation in the language used in those sections, from that used in prior statutes, and in the 2d section of the same statute.

The statute of June 13, 1789, entitled " an act to facilitate the collection of taxes" provided that in certain cases the collector should proceed to collect taxes by a sale of real estate, " taking the direction of the act establishing an equitable mode of making rates and taxes in every step of his procedure." Here a particular existing statute is named as the guide to be followed.

The statute of December, 28, 1791, contained this clause, " And selectmen assessors and collectors, in assessing and collecting taxes, in the particular cases mentioned in this act, shall proceed in all things agreeably to the former laws of this state now in force." Here again existing laws are particularly named.

There is another instance of the same kind in the stat-

ute of January 4, 1792, entitled "an act authorizing the collection of county taxes, &c."

And in the 2d section of the act now under consideration, collectors are directed to proceed in the business of collecting "in all things agreeably to the laws of this state now in force excepting, &c."

In all these instances a reference is made specifically to existing laws, and it is difficult to account for the change in the phraseology in the third section of the statute of 1794, in which the question now to be decided arises, unless it was intended, that the provisions in that section should be understood in the sense, in which we understand them.

If the intent had been to refer in those provisions to laws then existing, the language would surely have been that "the sheriff shall have the same power which collectors of taxes *now* have."

When the legislature, in 1796, repealed generally the statutes respecting the taxes of non residents, could it have been understood, that the parts repealed were to remain in force to govern the proceedings in the collection of taxes on unincorporated places? The statute of 1796 made very considerable alterations in the law on the subject, and what reason could exist, that should induce the legislature to leave the taxes upon unincorporated places to be collected in the mode prescribed in the acts then repealed, while a new and very different mode was provided for the collection of other non resident taxes? There can be no good reason imagined why that should have been done, and the conclusion is irresistible, that in 1796, the legislature understood the 3d section of the statute of 1794 in the sense in which we understand it, and supposed that the taxes upon unincorporated places were to be collected thereafter in the mode then prescribed.

The plaintiffs rely upon the decision in the case of *Sayles* v. *Batchelder*, as settling the question which arises

in this case, on this point, and the reasoning of the court in that case certainly gives countenance to the argument. But the decision itself is not opposed to any thing for which we contend.

The fifth and sixth sections of the statute of 1794, relate solely to taxes which had been already apportioned, and furnished no rule with respect to any other. And it is contended that so far as respects taxes which had been already apportioned, the third section of that statute fixed the rule to be pursued by the sheriff, and made it his duty to proceed according to the laws then in force, leaving his power and duties in relation to taxes thereafter to be apportioned to vary with the power and duties of collectors, as they might from time to time be varied by statute.

In the case of *Sayles* v. *Batchelder*, to have applied the statute of 1796 to the collection of taxes apportioned before the statute of 1794 would have given to the statute of 1796 a retrospective operation, and although to give it that operation might not have been within the prohibition of the constitution, still it was not to be so applied by construction, and without an express enactment of the statute. 7 Johns. 495—503; *Dash* v. *Van Kleek*.

Upon our construction of the statute of 1794, there will of course be nothing in the decision in *Sayles* v. *Batchelder*, to conflict with a decision in favor of the defendant in this case.

Another objection to the defence in this case is, that an advertisement was not posted up in a public place in Cambridge. To this we answer, that there was no public place within the meaning of the statute in the town of Cambridge. 3 N. H. Rep. 181, *Tidd* v. *Smith*. It was therefore unnecessary to post an advertisement there. *Lex non cogit ad impossibilia.* If however, there was a necessity of advertising in that town, the place selected was as public as any that could be found, and the advertisement was sufficient.

*Bell*, in reply.

The great point in the case is, whether a sale by the sheriff for taxes assessed upon an unorganized town by the treasrer of the state, should be made under the act of December 10, 1796, or that of February 11, 1791 ? Or in other words, whether the statute of February 22, 1794, made the act of 1791, which was then in force, the law to direct the sales by sheriffs down to the time when this sale was made.

It is agreed on all sides that there is no other statute, which reaches this case, besides the statute of 1794.

The present case is one of a peculiar class. The property in question is in an unorganized town, without improvements or inhabitants, and, of course, without any means within itself to assess or collect taxes.

The power to assess and collect taxes in such a case is given by the statute of 1794, to the treasurers of the state and county, and the sheriffs of the counties, and is given no where else.

The statute of 1796 has made no provision, and has affected to make none for any other than organized towns, having the power to act, and acting within themselves. But the act of 1794 is not perfect of itself. It does not provide a system for collecting the taxes, but by reference to some other statute.

The assessment is to be made in the case under the statute by the treasurers of the state and county. This is certain. And the sheriff is to collect; and part of his duty in the collection is pointed out and made certain by this act; that is, he shall in all cases advertise in the shire or half shire town of the county, and shall hold his sales there.

But what rule is prescribed to the sheriff for the performance of his other duties ?

The present defence is made under a sale for a county tax.

The act of 1794, section 4, provides that the sheriff to

whom any warrant shall be delivered, shall have the same authority and proceed in the same manner as is herein provided for them to collect state taxes.

The question is then merely, what mode has the statute of 1794 provided for collecting state taxes by the sheriff. The second section of the statute of 1794 answers this question. " The collectors of taxes, and the person appointed to receive non resident taxes, shall proceed in the business of collecting the taxes levied upon the real estates of non residents in all things agreeably to the laws of this state now in force."

This section clearly establishes the provisions of the statute of 1791, as the rules governing the proceedings of the collector and receiver.

The third section then provides for the case under consideration ; that when any taxes are, or shall be, apportioned to any town or place not incorporated, the treasurer shall assess the proportion of such town and commit the same to the sheriff—" and every such sheriff shall have the same power and authority respecting the taxes committed to him to collect, which collectors of towns have with respect to taxes of non residents, and shall observe the same directions which are by law pointed out."

Can language be clearer than this ?

He shall observe *the same directions* which *are* by law pointed out for the collectors of town taxes ; and shall *also* advertise in the shire town and hold his sales there.

Pointed out by what law ? Clearly the statute of 1791, the only law then in force, the provisions of which are as much re-enacted as if actually inserted in the third section of the statute of 1794, except as to publishing in the Boston newspapers.

This exception also proves conclusively the reference to the statute of 1791, as this is the only statute, or rather the first statute, which omitted the publication in the Boston newspaper, and required it to be in a paper in the county where the land might be, if there were any such in the county.

The 3d, 4th, 5th and 6th sections of the statute of 1794 were intended to provide, and did provide, for a case before unprovided for ; that is, the assessment and collection of taxes in unorganized towns and places. They make a full and perfect system in themselves by adopting the 5th section of the statute of 1791. They give no indication of a purpose to adopt, at any other time, any other provisions of any other law. The words of reference are all present and not future. The sheriff shall have such powers and authority as collectors of towns *have*—this is, *have now*, not *hereafter*.

The legislature might know and be willing to adopt the system as it then existed, and not be willing to adopt what it might be.

No rule of construction would require a reference to a thing that was not in existence, unless the language of reference was incapable of any other interpretation.

Now the language used in this instance is so far from being incapable of any other construction, that it has been solemnly decided in this court, and on these very sections of this act of 1794, that they were incapable of receiving the construction, for which the defendant now contends.

We shall, therefore, examine the case in which it was so decided. It was the case of *Sayles* v. *Batchelder*, decided in the county of Grafton, May term, 1827, after a very long, and we have no reason to doubt, a very thorough examination and consideration, both of the facts and the law of the case.

The taxes in that case were granted in the several years from 1780 to 1790, both inclusive, and were state taxes. Coventry was an unorganized town. On the 2d March, 1798, the treasurer of the state issued his warrant to the sheriff to collect the said taxes, and directed him to govern himself by the statute of February 11, 1791. This direction the sheriff followed.

Upon these facts the court decided that the act of December 10, 1796, had not repealed the fifth section of the

act of 1791, nor the third section of the act of February 22, 1794 ; that the act of 1796 had in view only assessments and collections made under the authority of towns ; that the act of 1794, in fact, incorporated the fifth section of the act of 1791 with itself, and made it, in law, part of itself ; that the statute of 1796, did not furnish the rule to govern the sale of Coventry in 1800, and that the acts of 1794 and 1791, taken together, formed the rule for the government of the sheriff, and that his proceedings being conformable to those statutes were valid ; and judgment was given accordingly.

So decisive is that case of the present, that the counsel of the defendant, aware of this fact, have endeavored to distinguish this case from that, and with what success we shall proceed to examine.

It is contended that *Sayles* v. *Batchelder* may have been correctly decided, and may well stand, and yet the defendants construction of the statute of 1794 be correct. But this construction, be it remembered, requires the adoption of the act of 1796 by the act of 1794, instead of the act of 1791.

Now we wholly deny that this defence can be maintained without wholly overturning, not only the reasoning, but the decision itself, in *Sayles* v. *Batchelder*.

The argument on the other side is, that the third section of the act of 1794, provides for taxes subsequent to its passage, and the 5th and 6th sections for such as had been apportioned on towns and were in arrear at the time that act passed ; that for future taxes the act of 1796 was adopted after it was made, and for taxes in arrear the act of 1791.

But this construction, in order to sustain *Sayles* v. *Batchelder*, requires the act of 1791 to be in force after the passage of the act of 1796. For although the taxes upon Coventry were apportioned before 1794, they were not assessed upon the town until March 2, 1798, more than a year after the passage of the act of 1796, and the sale did not take place until 1800.

But it happens, unfortunately for this argument, that the third section of the statute of 1794 does not regard taxes subsequently assessed only, but also such as had been apportioned. The language is "that when any taxes *are* or *shall be* proportioned to any town or place unincorporated;" clearly embracing taxes then granted and apportioned, as well as those that should be thereafter granted.

But the closing language of the sixth section, and the only part of it which applies to this subject, is wholly decisive of this question. That language is this. And the respective treasurers and sheriffs are hereby as fully empowered with respect to assessing and collecting said arrears as by this act are given in other cases. Now we say, that whatever the treasurer and sheriff have power to do in other cases, they have none in the case of taxes in arrear.

If they had the power to collect in other cases by the statute of 1791, so they had in the case of taxes outstanding and uncollected.

If they had power to collect in other cases by the statute of 1796, so they had also in the case of taxes in arrear. In short, it is perfectly manifest from those words of the 6th section, that whatever power is given to treasurers and sheriffs by the 3d and 4th sections, and for general purposes, the same power is also given them to assess and collect taxes in arrear under the 5th and 6th sections. So that the statute must have the same construction throughout. And whatever rule or power is given and applied to the collection of taxes apportioned, and in arrear at the time of the passage of the act, must also be applied to all other powers assumed by treasurer and sheriffs under the other sections of the statute, and *Sayles* v. *Batchelder* cannot be left standing, and the present defence sustained.

But it is said, that the statute of 1794 adopted the statute of 1791 for taxes proportioned and in arrear, be-

cause it was then in force and became the rule to the treasurer and sheriff, and their omission to assess and collect could not change the rule.

But if we are right in our construction of the latter clause of the 6th section, that is, if the same powers are given in case of taxes in arrear as in other cases ; and the rule was changed by the act of 1796, then we think it entirely clear that for all taxes assessed after 1796, although granted and apportioned before, the rule of 1796 should have been adopted—that is, we contend that two rules could not consistently with the words of the statute exist at the same time—one for taxes in arrear and one for future taxes.

But if the rule of assessment and collection did change at all in 1796, it changed with respect to taxes in arrear, as well as others, and consequently *Sayles* v. *Batchelder* cannot stand.

In short, we put our case entirely upon this point—upon the identity of the powers to assess and collect given to the treasurer and sheriff, with respect to taxes apportioned and in arrear, and taxes granted afterwards.

We say the 3d section applies in terms equally to taxes that *are* and to taxes that *shall be* proportioned—the powers granted are the same and consequently no construction of the statute can at the same time sustain *Sayles* v. *Batchelder*, and also sustain this defence.

But it is said, that cotemporaneous construction is with the defendant in this case. This we deny. We have examined the proceedings of sheriffs in the collection of taxes granted and assessed upon unincorporated places after the passing of the act of 1796, and find that those who were in office when that act passed, followed in the collection of such taxes the rules prescribed by the act of 1791.

RICHARDSON, C. J. delivered the opinion of the court.*

---

\* Parker, J. having been of counsel did not sit in the case.

Proprietors of
Cambridge,
v.
A. Chandler.

We shall, in this case, first examine the question, whether the sheriff, in selling the land, was bound to pursue the directions of the fifth section of the statute of February 11, 1791, entitled " an act declaring the duty and defining the power of collectors of taxes," or of the fourth section of the statute of December 10, 1796, entitled " an act for taxing the lands and buildings of non-residents."

The decision of this question depends upon the construction which is to be given to the third section of the statute of February 22, 1794, entitled " an act to establish an equitable method of making rates and taxes, and collecting such as are now due from, or may hereafter be assessed on such towns and places as are, or may be, incapable of choosing town officers." The words of the said third section, on which the question arises are as follows ; " And every such sheriff shall have the same power and authority respecting the taxes committed to him to collect, which collectors of towns have with respect to the taxes of non residents." If in this clause the legislature intended to give sheriffs only the powers, which collectors then had, it is clear that the sheriff, in this case, was bound to follow the directions of the statute of 1791. But if the legislature intended, that after the passing of the act, the sheriff should have the same powers as collectors might from time to time by law have, then it is equally clear that he was bound to pursue the directions of the statute of 1796.

We find, upon examination, that this question arose, and was decided, in this court in the case of *Sayles* v. *Batchelder*, in the couty of Grafton, May term, 1827.

That was an action of covenant broken, upon a deed, by which the defendant conveyed to the plaintiff certain lands in Coventry, and the question was, whether the defendant at the time he made the conveyance, was the owner of the lands.

David Webster, the sheriff of the county of Grafton,

by deed dated 17 October, 1801, conveyed the land to one Gerish, whose title the defendant had at the time he made the conveyance to the plaintiff.

It appeared that Coventry never had any town officers until the year 1801, and that sundry state taxes had been apportioned to Coventry between the years 1779 and 1791, which had never been paid. The treasurer of the state on the 2d March, 1798, issued his warrant to David Webster, sheriff as aforesaid, to collect the said taxes, amounting in the whole to $580,78.

This was done under the sixth section of the said statute of February 22, 1794, which authorised the selectmen, where taxes remained unpaid to make out in one sum the several years taxes that were due, and appoint a collector, and return his name to the treasurer of the state ; and in case no collector was thus returned, the treasurer was to have the same power of assessing in one sum such arrearages as the selectmen had. And it was provided that the respective treasurers and sheriffs should be thereby as fully empowered with respect to assessing and collecting said arrears, as in other cases. And the powers which the treasurers and sheriffs had in other cases were given by the said third section of the same statute on which the question now to be decided arises.

Webster, the sheriff, proceeded to advertise and sell the land according to the directions of the statute of February 11, 1791, and the question was, whether he was bound to pursue the directions of that statute, or the directions of the statute of December 10, 1796, which is the very question which we are now to decide in this case.

The question was ably argued by Mr. Woodbury, for the defendant, and Mr. Bell, for the plaintiff, and it was finally decided, upon mature consideration, that the sheriff was bound to proceed according to the directions of the statute of February 11, 1791, and judgment was rendered for the defendant.

It is argued that the case of *Sayles* v. *Batchelder* does not apply in this case, because all the taxes in that case had been apportioned before the statute of 1794, whereas the taxes in this case were apportioned since 1820, and we have attentively examined this argument.

The taxes in *Sayles* v. *Batchelder* were clearly within the sixth section of the statute of 1794, having been all apportioned before that statute was passed. But that section expressly provides that sheriffs shall be " *as fully empowered with respect to collecting said arrears as by this act are given in other cases.*"

To ascertain the powers of the sheriff in that case it was necessary to go to the third and fourth sections of the same statute as in this case. The taxes in that case were not committed to the sheriff until 1798. Now if the third section was intended to give the sheriff the same powers as collectors might from time to time have, the sheriff, in 1798, was bound to proceed according to the statute of 1796. The circumstance that the taxes had been apportioned before 1794 was immaterial. The same powers were given in relation to those as in relation to other taxes. No distinction was made. If the third section gave to sheriffs the powers which collectors might from time to time have, the sheriffs in 1798 had, with respect to arrears, the same powers as collectors had in relation to other taxes, and ought to have proceeded accordingly. That section applies with equal force, and in direct terms, both to past and future taxes, and the decision in *Sayles* v. *Batchelder* must be considered as directly in point in this case.

The sale in this case was at Lancaster, while the land was in another town, and it has been suggested that if the defendant's construction of the third section of the statute of 1794 is correct, the sale was void because the statute of 1796 requires that it should be in the place where the land is. But the answer, which has been given to this argument, is conclusive ; the statute of 1794

declares, that the sale shall in all cases be in the shire town, when made by the sheriff.

<span style="float:right">Proprietors of Cambridge v. A. Chandler.</span>

We have carefully reconsidered the question settled in *Sayles* v. *Batchelder*, and find it one that is not without doubt and difficulty. It is a question upon which much may be said on either side. And as we are by no means satisfied that the question was incorrectly settled in *Sayles* v. *Batchelder*, we feel ourselves bound by the decision.

In this case the validity of the defendant's title must then be settled by the statute of 1791; and as the proceedings of the sheriff were not conformable to the direction of that statute the sale must be adjudged void, and the plaintiffs are entitled to have

*Judgment on the verdict.*