Bellows vs. Parsons & a.

Sheriffs, in the collection of taxes assessed on unincorporated places from 1794 to 1831, were bound to proceed under the provisions of the act of 1791, prescribed by statute of 1794, and were not required to conform to the mode prescribed by statute from time to time during that period, to collectors of taxes for towns.

Where a question has been settled by decisions of this court, as to the construction of a statute relating to conveyances of real estate, and conveyances have been made for a series of years in conformity to such decisions, the court will not go into a revision of such decisions, though the grounds assigned for them may not be fully satisfactory; or, if it were a new question, they might incline to a different conclusion.

TRESPASS *quare clausum.* The *locus in quo* described in the declaration was lot No. 16, in the 14th range in the township of Errol. The defendant plead the general issue.

The plaintiff, to support the issue on his part, and to show title to the premises, offered, 1. A deed, Thomas Carlisle to him, dated July 26, 1827, acknowledged the 27th and recorded the 28th of July, 1827, conveying, among other tracts, lot No. 16 in the 14th range in Errol. 2. Evidence of a vote by the county convention, to raise taxes on the township of Errol, and of an assessment of the amount prescribed on the town, by the county treasurer; the treasurer's warrant to the sheriff, directing a sale of the land assessed, and a sale of the demanded premises by the sheriff to said Carlisle.

The defendant objected to the legality of the proceedings, in various particulars, which it is unnecessary to enumerate. The principal objection on which he relied was that the sheriff, in his proceedings in the sale, conformed to the provisions of the statute of December 10th, 1796, and not to the provisions of the statute of 1791, as prescribed in the act of 1794, which he contended should have governed the sale.

Verdict was taken, by consent, for the plaintiff, subject to be set aside and judgment rendered for the defendant, if the court should so direct.

*Young,* for the defendant. The court are called upon in

this case to overturn established and repeated decisions made by them, and introduce a new rule for the trial of titles to real estate. Such a suggestion ought not for a moment to be entertained, unless some great and evident public good is to be obtained by it.

In the case, *Cambridge* vs. *Chandler*, 6 *N. H. Rep.* 271, the question which is now raised was presented and adjudged by the court, and it should be regarded as permanently settled. We refer to the able argument of the counsel for the plaintiff, reported in that case, and to the reasons given in the decision, as the ground on which we rely to sustain the defendant.

The same question was also settled in *Sayles* vs. *Batchelder*, at the May term of this court, holden in Grafton county in 1827. We contend that this suit cannot be sustained, 1, for the reasons assigned in the opinions of the court to which we refer ; and, 2, for the reason that the question having been settled, it must be considered as *res adjudicata*, and cannot be disturbed ; so that we do not rely on a single precedent.

A single case has been adhered to in England, in a great number of instances, as conclusive on the court. *Ram on Legal Judgments* 114; 9 *Law Lib.* 67.

A particular decision, although deemed originally erroneous, may become established law, and the doctrine it contains may be binding by reason of the known consequences of the decision, as the circumstance that much property has been settled, and conveyances made under it. *Ambl.* 681, *Murdock* vs. *Dickens.*

Where a doctrine is once fixed, by a decision and practice under it, it is holden, that, although if the matter were *res integra* it might admit of doubt ; or although the doctrine is not founded in good sense ; or the court cannot understand the reason on which it is grounded ; or the judge cannot approve the reason that others have given ; or may not be able to assign a satisfactory one to himself; or although the doc-

trine is not founded on truly rational grounds and principles, but upon legal niceties and subtlety ; whatever may be the private opinion of the court, yet if the doctrine be once settled and the point adjudicated, it is to be adhered to. 1 *East* 493 ; 2 *Vesey, Jr.* 427 ; 1 *Peere Will.* 91 ; 1 *Vesey, Jr.* 16 ; 2 *Barn. & Adol.* 944 ; 7 *D. & E.* 415 ; 8 *Bing.* 526, 537 and 557 ; 4 *Burr.* 1960 ; *Cowp.* 192 ; 9 *Bing.* 643 ; 1 *W. Blac.* 264 ; 5 *D. & E.* 63 ; 7 *Barn. & Cress.* 148 ; 1 *Vern.* 188 ; 1 *Coxe* 252 ; 11 *Vesey* 557.

It is admitted that the title to a vast amount of real estate is dependent on this question.

*Wells & Livermore*, for the plaintiff, referred the court to the argument and authorities cited by the counsel for the defendant in the case of *Cambridge* vs. *Chandler*, 6 *N. H. Rep.* 271, and contended that that decision and the decision of *Sayles* vs. *Batchelder*, at the May term in Grafton county, 1827, were founded on principles relative to the construction of statutes so clearly erroneous, that they ought not to be regarded as precedents binding upon the court.

UPHAM, J.* The title of the plaintiff in this case is derived from a sale of the land, by the sheriff of this county, for taxes, and a deed executed under such sale. Various exceptions were taken on the trial to the proceedings of the sheriff, which might, perhaps, on investigation, be overruled ; or, if not overruled, be obviated by farther testimony, if a new trial should be ordered. There is one exception, however, which, if sustained, must be conclusive against any recovery of the plaintiff under the title now shown ; and to this we shall direct our attention. This exception is, that the sheriff conformed in his proceedings in the sale, so far as he conformed to any law, to the provisions of the statute of December 10th, 1796, and not to the provisions of the statute of February 11th, 1791, as prescribed in the act of 22d February, 1794.

* Chief Justice PARKER did not sit.

The act of 22d February, 1794, provides that "every sheriff shall have the same power and authority respecting the taxes committed to him to collect, which collectors of towns have with respect to the taxes of non-residents, and shall observe the same directions which are by law pointed out." 1 *Laws N. H.* (*Ed.* 1815,) 545.

The question arising under this clause of the act is, whether the law referred to the act then in force in relation to the collection of the taxes of non-residents, by the collectors of towns, as the permanent rule in such cases; or whether it provided that the proceedings of the sheriff should vary with the different provisions that might thereafterwards, from time to time, be made in relation to the collection of non-resident taxes by the collectors of town taxes.

It was argued in favor of the latter construction, that there seemed to be no reasonable doubt that the legislature intended to establish, by the act of 1794, an uniform system for the collection of taxes, so far as the nature of the case would admit; and the phraseology of various other statutes in parallel cases was referred to, to show that such must have been the intention of the legislature.

On the other hand, it was contended that the act of the legislature of 1794 referred to a distinct and specific rule for the collection of taxes, as established by the act of 1791: That if they intended the provision should be changing and variable, as the provision for the collection of taxes by town collectors might change and vary, it would have been perfectly easy to have made such provision, in terms admitting of no doubt: That there could have been no apprehension of a diversity in the mode of collection of taxes thereafter betwixt sheriffs and town collectors, because the laws were then the same; and if the legislature wished to retain them so, this might be done, and probably would be done by special enactment, whenever any change as to the collection of either tax was made. It was contended, therefore, that there was no occasion for any continuing, varying rule; and more-

over, that from the act itself there was no indication of a purpose of the legislature to adopt, by this act, the subsequent provisions of any future law ; that the words of reference in the statute were all present and not future, and that no rule of construction would require a reference to a thing that was not in existence, unless the language of reference was incapable of any other interpretation.

Such was the argument of the parties on this occasion ; and, on full consideration of the various views presented, it was held by the court, in *Sayles* vs. *Batchelder*, at the May term in Grafton county, in 1827, that the rule of collection of taxes was permanent, and to be governed by the act of 1791, until altered by express act of the legislature.

In the case of the *Proprietors of Cambridge* vs. *Chandler*, 6 *N. H. Rep.* 271, which was decided six years afterwards, the same question arose, in which the title to the whole township was involved, and was argued by eminent counsel, on its merits, at much length and ability. The previous case of *Sayles* vs. *Batchelder* was cited as an authority in point. It was alleged by the counsel for the plaintiff, who had been also counsel in the case of *Sayles* vs. *Batchelder*, that the decision in *Sayles* vs. *Batchelder* was made " after a very long and thorough examination, both of the law and the fact." See *Proprietors of Cambridge* vs. *Chandler*, 6 *N. H. Rep.* 282 ; and Mr. Chief Justice Richardson, in remarking upon the case of *Sayles* vs. *Batchelder*, says, that the question arising in that case " was ably argued by counsel for the plaintiff and defendant, and was finally decided upon mature consideration."

Notwithstanding this, the court permitted the whole matter to be again fully argued, and the decision in *Sayles* vs. *Batchelder* was affirmed. Mr. Chief Justice Richardson remarks : " We have carefully reconsidered the question, settled in *Sayles* vs. *Batchelder*, and find it one that is not without doubt and difficulty. It is a question upon which much may be said on either side ; and as we are by no means sat-

Bellows v. Parsons.

isfied that the question was incorrectly settled in that case, we feel ourselves bound by the decision."

The decision was made nine years since. Under these two decisions, numerous conveyances have been made of lands, based on title now proposed to be set aside ; and at this late hour, on account of some changes in the members constituting the court, we are called upon to revise and overrule both the case of the *Proprietors of Cambridge* vs. *Chandler* and the case of *Sayles* vs. *Batchelder ;* and no cause is assigned for this, except a reference to the argument of counsel, reported, and fully considered and overruled, in the case of the *Proprietors of Cambridge* vs. *Chandler*, with the assertion that this decision and that of *Sayles* vs. *Batchelder* are so repugnant to the true principles of the construction of statutes, that they ought not, even under the present circumstances in relation to this question, to be binding as precedents upon the court.

But we see no reason for such assertion. We regard those authorities as fully entitled to our respect as decisions in a matter of doubtful construction of a statute affecting extensively the land titles in this section of the state, and which were solemnly settled after much deliberation.

To overthrow decisions thus made, except upon most cogent reasons, would be productive of the highest mischief. Chancellor Kent, in his Commentaries, remarks, that "if a decision has been made, upon solemn argument and mature deliberation, the community have a right to regard it as a just declaration or exposition of the law, and regulate their actions and contracts by it. It would, therefore, be extremely inconvenient to the public, if precedents were not duly regarded and pretty implicitly followed. If judicial decisions are to be lightly disregarded, we shall disturb and unsettle the great landmarks of property." 1 *Kent's Com.* 443 ; 20 *Johns.* 722, *Goodell* vs. *Jackson ;* 16 *Johns.* 402, *Anderson* vs. *Jackson.*

A single case has been adhered to in England, in a great

number of instances, as having a controlling effect on subsequent cases. *Ram on Legal Judgments* 114, *n.* 6 ; 9 *Law Library* 67.

It was remarked by Lord Hardwicke, in 3 *Atkins*, " as one decision may constitute a binding authority, so, by greater reason, may it be the duty of the court to yield to two or a greater number of decisions."

In the case of *Goodtitle* vs. *Otway*, 7 *D. & E.* 400, Mr. Justice Ashurst remarks, " one would always wish that the law were certain upon all subjects ; but it is more emphatically important that it should be so in questions concerning real property. The decisions of the law are the great landmarks for the safety and regulation of real property. And perhaps it is of less importance how the law is determined, than that it should be determined and certain. *Stare decisis*, is a safe and prudent maxim : then, it is every man's own fault if he does not take such advice as will be sure to lead him right."

In 8 *Term Rep.* 503, *Doe* vs. *Allen*, Lord Kenyon says : " the maxim, *misera est servitas ubi jus est vagum, aut incertum*, applies with peculiar force to questions of real property. If, by means of new lights accruing to new judges, all that which was supposed to be law, by the wisdom of our ancestors, is to be swept away at a time when limitations are to take effect, mischievous indeed will be the consequences to the public."

In *Goodtitle* vs. *Jackson*, in the Court of Errors in New-York, 20 *Johns.* 721, Chancellor Kent remarks that the court has a right to overrule former decisions, and introduce a new rule of construction, where they have become entirely satisfied they had previously mistaken the law. But, where a rule of property has been once deliberately adopted and declared, it ought not to be disturbed by the same court, *except for very cogent reasons ;* otherwise the community would never be able to deal with safety, and would be in a state of perplexing uncertainty as to the law.

Numerous similar declarations might be quoted from eminent judges in England and this country.

This case is one where we are emphatically called upon to abide by the former decisions of this court. How this question might be settled, were it for the first time submitted to our consideration, it is unnecessary to determine. It is sufficient that the reasons adduced in behalf of the plaintiff are not such as to show such a clear and undoubted mistake on the part of the court as in our opinion to justify the reversal of decisions deliberately and repeatedly made by them.

We do not hesitate to reässert the declaration made by Mr. Chief Justice Richardson in the case, *Proprietors of Cambridge* vs. *Chandler,* relative to the prior decision that " the question raised in the case is one of doubt and difficulty, and that we are by no means clear it has been incorrectly settled." The decisions of the court, therefore, must remain as the settled law applicable to this case.

The plaintiff claims under a sale for taxes from the sheriff, made conformably to the provisions of the statute of 1796. By the former proceedings of the court, the proceedings under this sale were held to be void, for the reason that they should have conformed to the statute of 1791, the provisions of which were different. These decisions are now sustained by us. The plaintiff's title, therefore, fails, and the verdict must be set aside

*Judgment for the defendant.*